**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CIVIL ACTION NO: 1:05cv-60-M**

**SUDAMAX INDUSTRIA E COMERCIO DE
CIGARROS, LTDA, AND SAMURAI INDUSTRIA
E COMERCIO DE CIGARROS, LTDA**          **PLAINTIFF**

**VS.**

**BUTTS & ASHES, INC.; PILOT IMPORTING,
LLC; TANTUS TOBACCO, LLC AND BRIAN COOPER**      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Defendant's joint motion to dismiss [DN 8]. Having been fully briefed and argued, the matter stands ripe for decision.

For the reasons discussed below, Defendants' joint motion for dismissal under Fed. R. Civ. P. 12 (b)(7) is **DENIED**.

**I. BACKGROUND**

**A.  Procedural Background**

This contract dispute between Plaintiffs and Defendants comes to the Court by way of its diversity jurisdiction under 28 U.S.C. § 1332. The plaintiffs, Sudamax Industria e Comercio de Cigarros Ltda. ("Sudamax") and Samurai Industria e Comercio de Cigarros Ltda. ("Samurai"), are Brazilian corporations. The defendant companies, Butts & Ashes, Inc.; Pilot Importing, LLC; and Tantus Tobacco, LLC ("The Cooper Companies"); are all

1

Kentucky entities owned and operated by Brian Cooper, the individual defendant named in the lawsuit. Sudamax brought this action on May, 11, 2005 to enforce contract provisions under the Uniform Commercial Code between it and The Cooper Companies for back payments and placement of proceeds into a mandated escrow account, and additionally, to prevent Cooper from selling cigarettes that may be confused in the marketplace with Plaintiff's brand of cigarettes. Defendants filed this motion to dismiss stating that all necessary parties have not been joined under Federal Rules of Civil Procedure 12(b)(7) and 19(a) and (b).

**B.      Summary of Facts**

After the Master Settlement Agreement ("MSA") between the five largest tobacco companies and Attorneys General of 46 states, participating states created statutes to require any non-participating tobacco manufacturer to make annual payments to an escrow account maintained to benefit participating states. The annual payment was to be based on yearly cigarette sales in each state and made to the escrow account by April 15 of the following year. Failure to comply with the statute subjects the non-participating manufactures to financial liability, penalties and prohibition from selling cigarettes for two years. Foreign tobacco manufacturers ordinarily operate through a U.S. distributor to set up procedures to comply with the escrow regulations. Over the years since the MSA was introduced, domestic importers of foreign cigarettes have ordinarily made the required escrow payments after they computed sales from the previous year.

Prior to the agreements now in dispute, the Defendant, Brian Cooper, contracted with

one of the owners of the Plaintiff corporations, David Li Ming Young ("Young"), to buy some of Young's domestically manufactured cigarettes made by Young's LLC, YTC.US. Cooper's sale of Young's cigarettes lasted from July to October of 2003. In 2003, Cooper approached Young about purchasing Brazilian cigarettes made by Sudamax, of which Young was a part owner. Young set up a meeting between Cooper and Sudamax where Cooper asked Sudamax to produce the BERKLEY brand cigarette in Brazil for export to the U.S. The parties agreed that Sudamax would produce the BERKLEY cigarette, then sell it to a separate Brazilian company, Samurai, which would then export it to the U.S. for purchase by Cooper or one of The Cooper Companies. They further agreed that Sudamax/Samurai would be a non-participating member of the MSA. Consequently, Cooper/The Cooper Companies agreed to make the annual escrow payments for Sudamax/Samurai in the states where Cooper planned to sell BERKLEY cigarettes with any refunds therefrom to be distributed to Cooper.

    In setting up the distribution channels and contacting the various state officials, Cooper acted as an agent for Sudamax/Samurai to assure compliance with states' Escrow statutes. In his capacity under the contract, on June 4, 2003, Cooper also set up the escrow agreement with Bank One of Louisville, predecessor in interest to JP Morgan Chase & Co., on behalf of Sudamax/Samurai to arrange for the prospective required payments. As scheduled on April 4, 2004, Cooper made the required deposits on behalf of the Plaintiff companies for the following states where Cooper sold BERKLEY cigarettes: Kentucky, Missouri, Oklahoma, South Carolina, Tennessee and West Virginia. In 2004 several states

Attorneys General began questioning whether Samurai was the proper party to be certified as the non-participating manufacturer for BERKLEY cigarettes. Cooper then asked Sudamax to step in to ask states to certify them instead of Samurai as the non-participating manufacturer. To help in this endeavor, Sudamax bought all Samurai's assets and was assigned the existing escrow deposits in November of 2004. In the meantime, U.S. sales of BERKLEY cigarettes continued.

Prior to the April 15, 2005 deadline for escrow deposit, Cooper became upset that he had not received his refunds under the agreement and refused to make the escrow deposit for the 2004 sales. Cooper also failed to pay for shipments of BERKLEY cigarettes claiming that the shipments of BERKLEY's had been late and damaged. One of the Cooper Companies filed an intent to use a trademark application on April 21, 2005 for the BERLEY brand name. Plaintiffs argue the name is too closely aligned to BERKLEY and intended to confuse consumers, thus taking business from the BERKLEY brand. They filed the present action in order to enforce the payment provisions of the contract and enjoin Cooper from using the BERLEY name or any name that may cause confusion with the BERKLEY brand name. Cooper's motion to dismiss asserts that Plaintiffs failed to include 1) Young's LLC, YTC.US; 2) Bank One/Chase; and 3) the beneficiary states to the escrow account; and that these parties are so necessary and indispensable to the litigation that dismissal is warranted. At oral argument held on Defendants' joint motion, Defendants conceded that neither YTC.US, LLC nor Bank One/ Chase were indispensable parties under Fed. R. Civ. P. 19 warranting dismissal under Fed. R. Of Civ. P. 12(b)(7). Therefore, the Court need only

4

evaluate whether the beneficiary states are necessary and indispensable parties.

## II.  DISCUSSION

Rule 19 should be employed pragmatically to encourage full adjudication with a minimum of litigation effort.  Glancy v. Taubman Centers Inc., 373 F.3d 656, 664 (6th Cir. 2004) (quoting 7 Charles Alan Wright, Arhtur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1602 (3rd ed. 2001)).  In evaluating whether joinder is compulsory under Rule 19, courts use a three-step process.  Id. (internal citations omitted).  First is the determination of whether the absentee's presence is necessary.  Glancy, 373 F.3d at 666; Keweenaw Bay Indian Cmty v. State, 11 F.3d 1341, 1345 (6th Cir. 1993); Local 670 v. Int'l Union, United Rubber, Cork, Linoleum & Plastic Workers of Am., 822 F.2d 613, 618 (6th Cir.1987).  If determined necessary, the second step assesses if the absent party's joinder is feasible or if it would destroy subject matter jurisdiction.  Id.  Finally, if the absentee's joinder is not feasible, the third step evaluates whether the party is indispensable.  Id.

A party is necessary under Fed. R. Civ. P. 19(a) if (1) without the absent party complete relief cannot be accorded among those already in the action, OR (2) the absent party has an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the absentee's ability to protect that interest or (ii) leave the parties already in the action subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the absent party's interest.  Keweenaw Bay Indian Cmty., 11 F.3d at 1345.  If the court finds that the absent party falls within either one of the above categories,

the party is one to be joined if feasible.  Keweenaw Bay Indian Cmty., 11 F.3d at 1345.

The pending contract dispute between Sudamax and Cooper can be fully litigated with complete relief between the parties without involving the beneficiary states.  The states are not parties to the contractual dispute between Sudamax and Cooper.  Regardless of the outcome of this litigation, the states will hold Sudamax responsible for payments it owes the beneficiary states under state law as a non-participating manufacturer of cigarettes.  The states' interests are therefore not at issue or impeded in any way from their absence in the case.

Furthermore, the states' absence does not create a risk of multiple or inconsistent obligations among the parties already in this action.  The Defendants have no obligations to the states under the Escrow Agreement and will not be subject to liability therefrom.  The Defendants potentially have contractual obligations to Sudamax/Samurai which will be decided in this action.  Sudamax understands that it will have to answer to the states regardless of the outcome of this action.  Therefore, the resolution of the current action does not leave any of the parties currently in the action subject to inconsistent obligations.

Because neither criteria under Fed. R. Civ. P. 19(a) is met, the states are not necessary parties.  It is therefore unnecessary to evaluate steps two and three of the three-part test.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the joint motion for dismissal under Fed. R. Civ. P. 12 (b)(7) filed by Butts & Ashes, Inc.; Pilot Importing, LLC; and Tantus Tobacco, LLC and Brian Cooper is **denied**.

cc: Counsel of Record