# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:05CV-60-M**

**SUDAMAX INDUSTRIA E COMERCIO DE**             **PLAINTIFFS**
**CIGARROS, LTDA, et al.**

**vs.**

**BUTTES & ASHES, INC., et al.**             **DEFENDANTS**

**vs.**

**TANTUS TOBACCO, LLC**      **DEFENDANT/ THIRD PARTY PLAINTIFF**

**vs.**

**YTC US, LLC**            **THIRD PARTY DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Buttes & Ashes, Inc., Pilot Importing, LLC, and Brian Cooper, to dismiss the claims against them pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6) [DN 95].  Fully briefed, this matter is ripe for decision.

## STANDARD OF REVIEW

Because both parties have presented substantial matters outside of the pleadings, the Court shall treat the motion to dismiss as one for summary judgment and dispose of the motion as provided in Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b)(6); Shelby County Health Care Corp. v.  Southern Council of Industrial Workers Healthcare and Welfare Trust Fund,

203 F.3d 926, 931 (6th Cir. 2000).    In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The inquiry under Fed. R. Civ. P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52 (1986).  See also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. It is against this standard that

the Court reviews the following facts.

## BACKGROUND

Plaintiffs, Sudamax Industria e Comercio de Cigarros, LTDA, et al. ("Sudamax"), brought suit alleging numerous claims against Defendants, Tantus Tobacco, Buttes & Ashes, Pilot Importing, and Brian Cooper. Sudamax is a Brazilian corporation. David Young is a shareholder and the President of Sudamax. Brian Cooper is an individual and general partner of Tantus Tobacco. The record reflects that Cooper, on behalf of Tantus, and David Young, on behalf of Sudamax, entered into an oral contract in the fall of 2002 for Sudamax to manufacture Berkley brand cigarettes for Tantus to distribute to retail sellers. To secure the contract with Sudamax, Tantus agreed to make the necessary escrow payments owed by Sudamax under the 1998 Master Settlement Agreement. Tantus and Sudamax also agreed that the escrow refunds would be returned to Tantus. For reasons already discussed in the Court's previous opinions, the relationship between Tantus and Sudamax failed.

Sudamax subsequently filed this action asserting the following causes of action: permanent injunction requiring Defendants to make escrow payments (Count I); permanent injunction preventing Tantus from selling Berkley or Berley brand cigarettes (Count II); breach of fiduciary duty (Count III); breach of contract for failure to make escrow payments (Count IV); action for the price under KRS § 355.2-709 (Count V); action on open account (Count VI); constructive fraud (Count VII); and fraud and conspiracy to defraud (Count VIII). Plaintiffs agreed to voluntarily dismiss Counts II, VII, and VIII against all of the Defendants [DN 118]. The Court granted summary judgment in favor of Sudamax and

3

against Tantus on the liability portion of the claim for breach of contract for failure to make escrow payments (Count IV) [DN 139].  The Court granted summary judgment in favor of Defendants on the breach of fiduciary duty claim (Count III). [DN 139].

Defendants, Brian Cooper, Buttes & Ashes, and Pilot Importing (collectively "Defendants"), filed this motion for summary judgment arguing that they should be dismissed from all causes of action in the complaint because (1) there is no evidence to show that Buttes & Ashes or Pilot Importing were parties to the oral contract between Sudamax and Tantus; (2) there is no evidence to show that Brian Cooper acted in his individual capacity in the negotiations with Sudamax or during the period in which Tantus purchased product from Sudamax; and (3) the facts do not warrant piercing the corporate veil of Tantus. Defendants arguments shall be addressed in turn.

## DISCUSSION

### A.  Breach of Contract

Counts I, IV, V, and VI of the Complaint set forth various causes of action against not only Tantus, but Cooper, Buttes & Ashes, and Pilot Importing, based on an underlying theory of breach of contract.  Counts I and IV assert a claim for an injunction and for breach of contract  for failure to make escrow payments.  Counts V and VI assert claims for the price of the cigarettes under KRS § 355.2-709 and for payment of the open account.  Buttes & Ashes, Pilot Importing, and Cooper argue that these contractual claims should be dismissed because they are not parties to the contract for the sale of Berkley brand cigarettes.

To recover in any action based on breach of contract under Kentucky law, the party

seeking to recover must "show the existence and the breach of a contractually imposed duty." Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001); Strong v. Louisville & Nashville R. Co., 43 S.W.2d 11, 13 (Ky. 1931). The elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff. A contract is only binding upon the parties to a contract. Additionally, "Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal." Summit Petroleum Corp. of Indiana v. Ingersoll-Rand Financial Corp., 909 F.2d 862, 868 (6th Cir. 1990)(internal citations omitted).

In the present case, the Court finds that Sudamax failed to set forth sufficient evidence to establish the existence of a valid contract between Plaintiffs and Buttes & Ashes, Pilot Importing, and/or Brian Cooper. The evidence reflects that the Defendants were not parties to the oral contract between Sudamax and Tantus. The deposition testimony of David Young, President and shareholder of Sudamax, reflects that the oral contract at issue here was negotiated by Young on behalf of Sudamax and Cooper on behalf of Tantus in the Fall of 2002. Specifically, Mr. Young testified as follows:

> Q:   Let me go back just briefly before we get much more into the production issues. When did, I'd asked you about the role between Samurai and Sudamax, and I told you I'd come back to it and now I want to come back to it and understand. The agreement that you had reached, you were basically negotiating for Sudamax and Mr. Cooper was negotiating for Tantus, correct?
>
> A:   Correct.
>
> Q:   When Sudamax and Tantus reached their agreement in 2002, when did Samurai enter the picture?

5

A:      I think after we make the agreement, the verbal agreement, then we
        started.

(David Young Deposition, June 20, 2005, at 74.)  Additionally, in July of 2004, Mr. Rubene

Genehr, a consultant to Sudamax, sent Tantus an e-mail with a letter drafted by one of

Sudamax's lawyers for execution by Mr. Cooper on behalf of Tantus.  It appears from the

record that Sudamax prepared the letter for Tantus to send back to Sudamax in an effort to

convince one of Sudamax's vendors to be more attentive to deadlines.

Based upon the evidence in the record, it is clear that Buttes & Ashes and Pilot

Importing are not parties to the oral contract.  Furthermore, even though Cooper as President

of Tantus negotiated with Sudamax to form the oral contract in dispute in this action, his role

as agent in those negotiations does not subject him to liability.  As noted above, an agent is

not personally liable for acts performed within the scope of his agency on behalf of a

disclosed principal.  <u>Summit Petroleum</u>, 909 F.2d at 868.  Young testified that in the

formation of this oral contract he negotiated on behalf of Sudamax and Cooper was

negotiating for Tantus.  (Young Deposition at 73.)

Plaintiffs argue that summary judgment is not appropriate at this time.  Plaintiffs

maintain that since the contract between the parties was a verbal one, the Defendants do not

have any evidence to attest to the fact that they were not parties to this agreement.  Sudamax

appears to attempt to shift the burden of proof in this case.  Defendants offered the testimony

of the President of Sudamax, David Young, to establish that the only contracting parties were

Sudamax and Tantus.  Contrary to Plaintiffs' argument, at this stage of the litigation, it is

6

incumbent on the Plaintiffs to come forward with affirmative evidence demonstrating summary judgment would be inappropriate.  <u>Matsushita</u>, 475 U.S. at 586.

In challenging the motion for summary judgment, Plaintiffs rely on the declaration of Rubin Genehr, a financial and business consultant to Sudamax.  Genehr avers that all the negotiations between Plaintiffs and Brian Cooper "intended to consummate a relationship whereby Plaintiffs would manufacture Brazilian-made cigarettes for the benefit of Brian Cooper occurred between Plaintiffs and Mr. Cooper personally and did not initially involve any particular corporate entity owned by Brian Cooper." (Ruben Genehr Declaration, March 9, 2007, at ¶ 5.)  Based upon this statement, Plaintiffs argue that Sudamax negotiated with Brian Cooper and never agreed to contract with any other legal entity; and as a result, genuine issues of material fact exists concerning which Defendants are liable to Plaintiffs.

The Court finds that the Genehr declaration is not sufficient to support a contract claim against Cooper individually or any of the other Defendants.  Genehr's deposition testimony demonstrates that he lacked the personal knowledge necessary to attest to the formation of the contract.  Genehr testified at his deposition that Sudamax first became involved in discussions with Tantus in September of 2002. (Rubene Genehr Deposition, September 26, 2006, at 44.)[1]  Mr. Genehr further testified that he did not become involved

---

[1]Defendants argue that Genehr's recent declaration is contrary to his 2006 deposition testimony and should not be considered by the Court.  Genehr testified at his deposition that:

Q:     With that as a marker do you recall when Sudamax first became involved in discussions with Tantus?

A:     I'd say it was around September, 2002.

in the Sudamax/Tantus business relationship until early 2003.   (Genehr Dep. at 45.) Therefore, the only evidence in the record regarding the actual parties to the contract is the deposition testimony of Mr. Young and Mr. Cooper.

For these reasons, the Court concludes that Buttes & Ashes, Pilot Importing, and Brian Cooper were not parties to the oral contract.

### B.  Piercing the Corporate Veil

Plaintiffs also argue that Brian Cooper, Buttes & Ashes, and Pilot Importing should be held liable for their dealings with Sudamax under the alter ego theory of "piercing the corporate veil."   Plaintiffs contend that Cooper owns, either partially or wholly, a number of business entities that are so intertwined as to permit this Court to pierce the corporate veil. Plaintiffs maintain that Brian Cooper's corporations are in such a web that Plaintiffs were unaware with which corporation they were contracting.

Defendants argue that piercing the corporate veil is not appropriate in this case.  First, Defendants maintain that Sudamax cannot seek to pierce the corporate veil because it did not include such a claim in its complaint.  Second, Defendants argue that even if the Court overlooks the deficiencies in Sudamax's pleadings,  the facts do not support the application of veil-piercing in the present case.

---

(Genehr Deposition at 44).  The Defendants' reliance on this specific portion of Genehr's deposition testimony is somewhat misplaced.   During Genehr's deposition, Mr. Scott White instructed Mr. Genehr that "[w]hen I refer to Tantus I mean all of the Cooper entities like Tantus, Buttes and Ashes, Pilot, Alliance and Brian Cooper."  (Genehr Dep. at 18.)  Therefore, with respect to who was the contracting entities, Mr. Genehr's deposition does not shed any light on this matter whatsoever.

## 1. Failure to Plead

A theory of liability that the corporate veil should be pierced must be plead in the complaint. Morgan v. O'Neil, 652 S.W.2d 83, 85 (Ky. 1983); National Resources and Environmental Protection Cabinet v. Williams, 768 S.W.2d 47, 50-51 (Ky. 1989)("'A shareholder may be liable for a corporate debt either by 'piercing the corporate veil' or by statutory authorization'"; a complaint which alleges neither is fatally defective); Zetter v. Griffith Aviation, Inc., 2006 WL 1117678, *8 (E.D. Ky. April 25, 2006); First National Bank of Louisville v. Lustig, 809 F. Supp. 444, 446 (E.D. La. 1992)(interpreting Kentucky law); Baseball at Trotwood, LLC v. Dayton Professional Baseball Club, 2003 WL 25566103 (S.D. Ohio Sept. 2, 2003)(discussing Kentucky law). See also Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989). Plaintiffs failed to allege in the complaint that the corporate veil of Tantus should be pierced in order to find Cooper, Buttes & Ashes, and Pilot Importing liable for Tantus's breach of contract.

Assuming it could be inferred from the factual pleadings in the complaint that Plaintiffs sought to pierce the corporate veil of Tantus, the Court will examine whether the Plaintiffs have raised a genuine issue of material fact with respect to its veil piercing claim.

## 2. Piercing the Corporate Veil

Courts are generally reluctant to disregard the corporate entity. Holsclaw v. Kenilworth Inc. Co., 644 S.W.2d 353 (Ky. App. 1982); United States v. WRW Corp., 778 F. Supp. 919, 923 (E.D. Ky. 1991). The corporate veil should not be pierced unless there is (1) "such a unity of ownership and interest" that the separate personalities of the

corporation and its owner cease to exist, and (2) "the facts are such that an adherence to the normal attributes . . . of separate corporate existence would sanction a fraud or promote injustice." White v. Winchester Land Development Corp., 584 S.W.2d 56, 61-62 (Ky. App. 1979). See also 1 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations, § 41.30 (perm. ed. rev. vol. 1990). "[T]he first element focuses on the relationship between the corporation and the owners or other corporate actors, while the second element concerns the relationship between the corporation and the plaintiff." Thomas v. Brooks, 2007 WL 1378510, *3 (Ky. App. May 11, 2007). In deciding whether to pierce the veil, courts have identified several factors bearing on the first element: " (1) undercapitalization; (2) a failure to observe the formalities of corporate existence; (3) nonpayment or overpayment of dividends; (4) a siphoning off of funds by the dominant shareholder(s); and (5) the majority shareholders having guaranteed corporate liabilities in their individual capacities." White, 584 S.W.2d at 62. "No single factor is dispositive, and generally several must be present to justify piercing." Thomas, 2007 WL 1378510, *3.

Plaintiffs retained Howard Schneider, a certified public accountant, "to determine if Brian Cooper's use of his various entities is a sham such that the court may pierce the corporate veil and award judgment against all relevant business entities as well as Mr. Cooper individually." (Howard J. Schneider Declaration at ¶ 2.) Schneider states that he examined the financial records and tax returns for Brian Cooper and the following legal entities in which Cooper owns an interest: Tantus Tobacco, Russell County Holdings, Potentia Tobacco Group, Pilot Importing, Direct Delivery, and Buttes & Ashes. Schneider

10

refers to these companies as the "Cooper Group."  Schneider notes that Brian Cooper's partners include Kenneth Catron, Jorge Rodriguez, and Charles Webb.

Schneider states that "[i]n 2005 Tantus paid its affiliates $1,690,634 and received from these affiliates $1,608,460." (Schneider Declaration at ¶ 5.)  Based on this figure, Schneider opines that "[b]ecause each of the affiliated companies are owned and controlled by the Cooper Group, these financial activities are a clear indication that Brian Cooper and his affiliated entities are alter egos." (Id.)  To support this argument, Schneider points to two entities through which he claims that Tantus is hiding assets, Progress Machinery and Russell County Holdings.  Russell County Holdings owns the facility used by Tantus. Progress Machinery owns the machinery used and leased by Tantus.  According to Schneider, Tantus loaned to its partners $325,723.67 to purchase the equipment now owned by Progress Machinery and leased by Tantus.  Schneider opines that based upon this information "[t]his 'shifting' of money is clearly suspect and clearly reason to believe the intent was to deceptively filter funds throughout a variety of corporate entities all for the sole and exclusive benefit of the partners who in all cases were identical for all such corporate [entities]." (Schneider Declaration at ¶ 6.)

The Court finds that application of a veil piercing theory in the present case is difficult in light of the parties the Plaintiffs have sued.  In arguing that veil piercing of Tantus is warranted, Plaintiffs' expert points to two entities, Progress Machinery & Russell County Holdings, through which he claims that Tantus is hiding assets.  However, these two entities have not even been named as defendants.  Instead, Plaintiffs assert liability against Buttes &

11

Ashes and Pilot Importing which are two companies for which Schneider has no information suggesting they are alter egos of Tantus, except a common ownership by Cooper. Similarity of ownership is insufficient evidence by itself to conclude that Buttes & Ashes and Pilot Importing are the alter egos of Tantus. Poyner v. Lear Siegler, Inc., 542 F.2d 955, 958 (6th Cir. 1976).

Notwithstanding, with respect to the first element, the Court finds that the evidence, even taken in light most favorable to Sudamax, does not establish the "separateness" of Tantus and Cooper, Buttes & Ashes, or Pilot Importing has ceased. The record reflects that Tantus is an active Kentucky limited liability corporation in good standing with the Kentucky Secretary of State. The company observes standard corporate formalities. The company maintains bank accounts in its own name; files corporate taxes; and files financial statements as required by law which were reviewed by Plaintiffs' expert. Similarly, Buttes & Ashes, is an active Kentucky corporation in good standing with the Kentucky Secretary of State. Buttes & Ashes owns and operates several retail stores in which it sells tobacco products. Buttes & Ashes maintains bank accounts in its own name and files tax returns. Pilot Importing is a limited liability company in good standing with the Kentucky Secretary of State. It is not currently being operated and has no open bank accounts. Cooper testified that it did not file any joint tax returns.

Further, Tantus disclosed all business transactions between it and its related entities. In fact, Plaintiffs' expert was able to track the flow of money between the related entities. There is no evidence that Brian Cooper commingled personal funds with corporate funds.

12

Likewise, there is no evidence that others pay or guarantee debts of Tantus.  Furthermore, while Sudamax argues that Tantus is undercapitalized and insolvent, Plaintiffs fail to present any evidence to support this argument.  Sudamax contends that "Tantus now claims an inability to pay its creditors as set forth in this current litigation." (Response at 7.)  Contrary to Plaintiffs' argument, Tantus does not defend the current breach of contract action on the basis that it has insufficient funds to meet its obligations under the oral contract.  Rather, Tantus simply disputes the amount that may be owed due to Sudamax's alleged breach of the contract in question.

Even if Sudamax had produced evidence demonstrating a genuine issue of fact on the first element, Plaintiffs failed to set forth sufficient allegations of fraud to establish the second element.  The Court finds that adherence to the treatment of Tantus as a separate entity would not "sanction a fraud or promote injustice" in this case.  White, 584 S.W.2d at 62.  "[T]he corporate veil may not be pierced without a showing of fraud or injustice separate and apart from the corporation's failure to pay its debt." Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989).  Plaintiffs have failed to make a showing of fraud in this case.  In fact, Plaintiffs abandoned all fraud claims asserted against Tantus in the complaint.  In the present case, Plaintiffs have merely shown a failure on the part of Tantus to pay its debt.  See also Southeast Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 679 (6th Cir. 2006)(citing 1 William M. Fletcher, Fletcher Cyclopedia of the Law Private Corporations, § 41.85).  Because there are not sufficient allegations of fraud, there is no basis for Tantus's corporate veil to be pierced.

13

For the reasons set forth above, the Court finds that piercing the corporate veil of Tantus is not appropriate.

## CONCLUSION

Given that Buttes & Ashes, Pilot Importing, and Brian Cooper were not parties to the oral contract, given Kentucky's rule that the corporate veil should only be pierced "reluctantly and cautiously," and finding no genuine issues of material fact, **IT IS HEREBY ORDERED** that the motion for summary judgment by Defendants, Buttes & Ashes, Pilot Importing, and Brian Cooper, [DN 95] is **GRANTED**.

cc: counsel of record

14